UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>ENOC MARTINEZ LOPEZ, et al.,<br><br>   Defendants. | CASE NO. 2:22-cr-00211-LK<br><br>ORDER DENYING MOTION FOR REVIEW AND REVOCATION OF DETENTION ORDER |

This matter comes before the Court on Defendant Enoc Martinez Lopez's Motion for Review and Revocation of Magistrate Judge's Detention Order. Dkt. No. 44. Having thoroughly reviewed the record and governing law, the Court denies the motion.

### I.   BACKGROUND

In early 2021, law enforcement began investigating Mr. Martinez Lopez as the suspected head of a drug trafficking organization in Northwest Washington. Dkt. No. 48 at 2; Dkt. No. 1 at 10–11. This investigation ultimately connected Mr. Martinez Lopez to approximately 15 known drug traffickers and identified him as a primary source of cocaine, fentanyl, methamphetamine, and heroin. Dkt. No. 48 at 2; Dkt. No. 1 at 10–11. Law enforcement arrested Mr. Martinez Lopez

in November 2022 following extensive surveillance and several controlled purchases. Dkt. No. 48 at 5; *see* Dkt. No. 1 at 10–36 (probable cause summary). A search of his home yielded $177,710.50 in cash, 8.7 kilograms of fentanyl pills, 2.3 kilograms of fentanyl powder, 5.1 kilograms of cocaine, 1 kilogram of heroin, and 6.2 kilograms of methamphetamine. Dkt. No. 48 at 5; *see also id.* at 5–7 (photographs of seized drugs).

A federal grand jury indicted Mr. Martinez Lopez for Conspiracy to Distribute Controlled Substances (Count 1), Distribution of Controlled Substances (Count 5), Distribution of Fentanyl (Count 8), and Possession of Controlled Substances with Intent to Distribute (Count 10). Dkt. No. 28 at 1–2, 4, 6–8; *see* 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1), (b)(1)(A)–(C), and 846. The Government moved for pretrial detention pursuant to 18 U.S.C. § 3142(e) and (f), Dkt. No. 20, and on December 1, 2022, United States Magistrate Judge S. Kate Vaughan held a detention hearing, Dkt. Nos. 25, 44-1 at 1.[1] There, defense counsel acknowledged that this is a "serious case" but emphasized Mr. Martinez Lopez's "long-standing" and "very strong ties to this community," "solid" employment history, three children, and "very limited" criminal history. Dkt. No. 44-1 at 9–11. Counsel further noted that, except for one failed uranalysis test, Mr. Martinez Lopez had complied with the terms of his supervision for a January 2021 DUI. *See id.* at 11 ("So here's someone who's out there following instructions, getting the help that they need and being compliant.").

Judge Vaughan ordered Mr. Martinez Lopez detained pending trial. Dkt. No. 26; Dkt. No. 44-1 at 15.[2] After evaluating the Section 3142(g) factors, she concluded that no condition or

---

[1] The grand jury returned a signed indictment against Mr. Martinez Lopez on December 14, 2022, after the detention hearing. *See* Dkt. No. 28 at 1. The Government formally charged him with the described offenses on November 28, 2022. *See* Dkt. No. 1.

[2] United States Magistrate Judge Brian Tsuchida signed an order continuing Mr. Martinez Lopez's detention after the grand jury returned an indictment. Dkt. No. 31.

ORDER DENYING MOTION FOR REVIEW AND REVOCATION OF DETENTION ORDER - 2

combination of conditions will reasonably assure Mr. Martinez Lopez's appearance at future proceedings or the safety of other persons and the community. Dkt. No. 26 at 1–2. More specifically, Judge Vaughan found that Mr. Martinez Lopez poses a flight risk because of his significant family ties to Mexico, ties evidenced by his trip there a month before his arrest. *Id.* at 2; Dkt. No. 44-1 at 13. She further determined that Mr. Martinez Lopez poses a danger to the community because of the serious nature of the charged offenses—namely, the large quantities of fentanyl and other highly toxic drugs that he kept in a residence occupied by his pregnant girlfriend and three young children. Dkt. No. 26 at 2; Dkt. No. 44-1 at 15. In Judge Vaughan's view, the seized drugs and cash, controlled buys, and cell phone records amount to "particularly strong" and weighty evidence against Mr. Martinez Lopez. Dkt. No. 44-1 at 15; Dkt. No. 26 at 2.

Even more compelling, however, was that Mr. Martinez Lopez violated the terms of his release for two prior convictions. Dkt. No. 44-1 at 13; Dkt. No. 26 at 2 ("Defendant allegedly committed the current offense while under Court supervision."). His failure to comply with previous court orders was "of grave concern" to Judge Vaughan. Dkt. No. 44-1 at 13. She was likewise troubled by several "material discrepancies between [Mr. Martinez Lopez]'s statements regarding his finances, his residence, and his use of controlled substances and alcohol, and statements from his collateral contact and treatment provider." Dkt. No. 26 at 2; *see* Dkt. No. 44-1 at 14 ("Mr. Martinez Lopez made statements that he had not had any positive UAs during his treatment, but that has been refuted by the treatment provider who noted he tested positive both for cocaine and for alcohol."). This apparent lack of candor with the Probation Office further eroded Judge Vaughan's confidence in any sort of conditional pretrial release. Dkt. No. 44-1 at 15 ("It is incredibly important that a defendant be fully forthright and honest with the probation office if they're to be supervised, particularly here[.]").

ORDER DENYING MOTION FOR REVIEW AND REVOCATION OF DETENTION ORDER - 3

Mr. Martinez Lopez moved to revoke Judge Vaughan's detention order. Dkt. No. 44; *see* 18 U.S.C. § 3145(b).

## II.   DISCUSSION

A district court reviews pretrial detention orders de novo. *United States v. Koenig*, 912 F.2d 1190, 1192–93 (9th Cir. 1990). Although the Court conducts its review without deference to Judge Vaughan's factual findings, it need not "start over" or proceed as if her decision and findings do not exist. *Id.* at 1192–93; *see United States v. Carrillo Lopez*, No. MJ20-0020-JCC, 2020 WL 3414674, at *2 (W.D. Wash. June 22, 2020) ("The district court thus reviews the evidence that was before the magistrate judge and any additional evidence proffered by the parties[.]").

### A.   Legal Standard

The Bail Reform Act mandates release of a defendant pending trial unless the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e)(1); *see United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). This requirement reflects the essential principle that "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Thus, "[o]nly in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015).

The Government bears the burden of showing that the defendant poses a danger to the community by clear and convincing evidence, and it bears the burden of showing that he poses a flight risk by a preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). But where, as here, there is probable cause to believe that the defendant committed "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," there is a rebuttable presumption "that no condition or combination

of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(3)(A).[3] In order to rebut the presumption against pretrial release, the defendant "must produce evidence that he does not pose a danger to the community or a risk of flight." *Valenzuela*, 2012 WL 1377087, at *2. Although this presumption briefly shifts the burden of proof to the defendant, the burden of persuasion always remains with the Government. *Hir*, 517 F.3d at 1086. And it doesn't take much to rebut the presumption. A defendant need only "produce 'some evidence' that there are conditions that would reasonably assure his or her appearance and the community's safety[.]" *United States v. Rhule*, No. CR20-0105-JCC-2, 2020 WL 5984072, at *3 (W.D. Wash. Oct. 8, 2020) (quoting *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985)).

If the defendant does so, the Court must then consider four factors to determine whether detention is nonetheless warranted: (1) "the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g); *see United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019) (a district court must conduct "an individualized evaluation" that is "guided by" these factors). The Court also treats the original presumption as an evidentiary finding militating against release and weighs it along with other evidence relevant to the Section 3142(g) factors. *See Hir*, 517 F.3d at 1086.

---

[3] Based on the indictment, Dkt. No. 28, the Court finds probable cause to believe that Mr. Martinez Lopez committed this presumption-eligible offense. *See United States v. Valenzuela*, No. 12-cr-062-RSL, 2012 WL 1377087, at *2 (W.D. Wash. Apr. 19, 2012) ("For purposes of § 3142(e), an indictment by a grand jury establishes probable cause triggering the presumption."). The parties also agree that this is a rebuttable-presumption case. *See* Dkt. No. 44 at 3–4; Dkt. No. 48 at 7.

B.  **Mr. Martinez Lopez Rebutted the Section 3142(e)(3) Presumption**

Judge Vaughan did not expressly decide whether Mr. Martinez Lopez proffered sufficient evidence to rebut the Section 3142(e)(3) presumption. *See* Dkt. No. 26 at 2 (detention order); Dkt. No. 44-1 at 12–15 (detention hearing transcripts). Although she acknowledged that this is a presumption case and the presumption can be overcome, she proceeded immediately to the Section 3142(g) factors. Dkt. No. 44-1 at 12–15. Mr. Martinez Lopez highlights this oversight and argues that he "met his slight burden of production by demonstrating his strong ties to the community, family support, and limited criminal history." Dkt. No. 44 at 12. The Government does not address whether the presumption is overcome here. Like Judge Vaughan, it focuses exclusively on why pretrial detention is appropriate under the Section 3142(g) factors. *See* Dkt. No. 48 at 7–11. The Court concludes that Mr. Martinez Lopez's ties to the community, three children, limited criminal history, and previously stable employment constitutes "some evidence" that conditions exist sufficient to ensure his future appearance and the community's safety. *See Rhule*, 2020 WL 5984072, at *3.

C.  **The Section 3142(g) Factors Nonetheless Weigh Against Pretrial Release**

For the reasons discussed below, the Court concludes that no condition or combination of conditions will reasonably assure Mr. Martinez Lopez's appearance for future proceedings and the safety of the community.

    1.    <u>Nature and Circumstances of the Offenses</u>

This factor favors detention. The Court notes at the outset that the offenses with which Mr. Martinez Lopez is charged involve controlled substances. *See* 18 U.S.C. § 3142(g)(1). And while the Court need not recount every detail of the alleged drug trafficking network, the Government highlights a handful of evidence that illustrates the nature of the offenses:

- August 2021: Mr. Martinez Lopez sold an individual one pound of methamphetamine and 1,000 fentanyl pills. Dkt. No. 48 at 3. That individual subsequently sent multiple payments of at least $5,000 to Mr. Martinez Lopez's girlfriend. *Id.* Later that same month, law enforcement in California arrested an individual driving Mr. Martinez Lopez's vehicle with three pounds of vacuum-sealed cocaine. *Id.* This individual's phone contained text messages from Mr. Martinez Lopez, and Mr. Martinez Lopez's girlfriend later retrieved the vehicle. *Id.*

- April 2022: Law enforcement witnessed Mr. Martinez Lopez and his co-defendant, Adam Wisniewski, engage in a "likely drug transaction." *Id.* Mr. Wisniewski was thereafter detained with 233 grams of suspected fentanyl pills, 68.75 grams of suspected fentanyl powder, and a firearm. *Id.*

- June 2022: Agents observed Mr. Martinez Lopez hand a shoebox to an individual. *Id.* at 4. The individual was detained, and the shoebox contained $29,020 in cash. *Id.*

- July–August 2022: Mr. Martinez Lopez and his co-defendant, Jesse Witteveen, exchanged a series of text messages. *Id.* During this time, Mr. Witteveen ordered 5,000 fentanyl pills (2,000 on July 30, 2022 and 3,000 on August 12, 2022) and a pound of an unidentified drug (on August 12, 2022) from Mr. Martinez Lopez. *Id.* Following the July 30, 2022 order but before the August 12, 2022 order, Mr. Witteveen indicated that he was going to pay Mr. Martinez Lopez $10,000 and an exchange occurred between the two. *Id.*

- August 2022: Mr. Martinez Lopez sold 1,000 fentanyl pills and one ounce of heroin to a confidential source. *Id.*

- November 2022: Law enforcement observed Mr. Martinez Lopez and Mr. Witteveen meet and conduct a "likely drug exchange." *Id.* When officers attempted to stop Mr. Witteveen, he fled and threw a bag from his vehicle. *Id.* This bag contained 959 grams of

methamphetamine and 346 grams of fentanyl pills. *Id.* A few days later, Mr. Martinez Lopez sold 1,000 fentanyl pills and one ounce of heroin to a confidential source. *Id.* at 5.

Mr. Martinez Lopez relies heavily on the fact that no firearms were recovered from his residence—only drugs—and emphasizes that there are no allegations of violence or threatened violence in this case. Dkt. No. 44 at 15. This is too narrow a view of "dangerous." In *Carillo Lopez*, the Court noted that the defendant's possession of methamphetamine with intent to distribute and possession of heroin with intent to distribute reflected "a serious disregard for the personal safety of others and a fundamental disrespect for the law." 2020 WL 3414674, at *3. There the Court was "reluctant to entertain the idea that Mr. Carillo Lopez's alleged offenses [were] somehow less serious because he did not threaten or physically harm any particular individual." *Id.* Here too, Mr. Martinez Lopez's argument "glosses over the dangerousness of storing significant amounts of methamphetamine and cocaine where minors could have easily accessed the drugs." *Id.*; *see* Dkt. No. 48 at 8 ("[T]he quantity of drugs in the residence, which was shared by his pregnant girlfriend and their three young children, demonstrate[s] that Martinez [Lopez] was indifferent at best to the safety of others (including his own family)."). The charged offenses are thus "very dangerous." *Carillo Lopez*, 2020 WL 3414674, at *3.

Also noteworthy is the potential sentence Mr. Martinez Lopez faces. *See* 21 U.S.C. § 841(b)(1)(A)(vi) (Count 1, violation of Section 841(a) involving 400 grams or more of fentanyl carries minimum sentence of 10 years and maximum sentence of life); *id.* § 841(b)(1)(B)(vi) (Count 5, violation of Section 841(a) involving 40 grams or more of fentanyl carries minimum sentence of 5 years and maximum sentence of 40 years); *id.* (Count 8, violation of Section 841(a) involving 40 grams or more of fentanyl carries minimum sentence of 5 years and maximum sentence of 40 years); *id.* § 841(b)(1)(A)(i), (vi), (viii) (Count 10, violation of Section 841(a) involving 400 grams or more of fentanyl, 50 grams or more of methamphetamine, and 1 kilogram

or more of heroine carries minimum sentence of 10 years and maximum sentence of life). The prospect of such a lengthy sentence poses an inherent flight risk and further counsels against release under the first factor. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (noting that "[c]onsideration of the nature of the offenses charged involves consideration of the penalties," and it is reasonable to "look at the potential maximum sentences" a defendant faces if "found guilty on each count and sentenced consecutively on each count"); *United States v. Garg*, No. CR21-0045-JCC, 2021 WL 2012584, at *2 (W.D. Wash. May 20, 2021) (defendant posed a significant flight risk because he was charged with offenses subject to mandatory minimum sentences and several years of incarceration).

  2. <u>Weight of the Evidence</u>

The second factor also favors detention. "[T]he weight of the evidence is the least important, and the statute neither requires nor permits a pretrial determination of guilt." *Gebro*, 948 F.2d at 1121; *see also United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (the district court may consider this factor "only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community."). And even where, as here, "the evidence strongly weighs in favor of conviction, release is still appropriate if the community's safety and future appearances before the Court can be 'reasonably assured' by release conditions." *United States v. Graham*, No. CR20-156-RSM, 2021 WL 75256, at *2 (W.D. Wash. Jan. 8, 2021) (quoting *Motamedi*, 767 F.2d at 1408). The evidence in this case is overwhelming. As repeatedly noted above, law enforcement's search of Mr. Martinez Lopez's residence yielded over $170,000 in cash and several kilograms of extremely dangerous drugs. State and federal agents also spent months closely surveilling Mr. Martinez Lopez and his associates, monitoring their communications, and, eventually, arresting many of them with substantial amounts of drugs. Although the Court makes no determination as to Mr. Martinez Lopez's guilt, it acknowledges the

strength of the evidence against him and concludes that pretrial release is inappropriate under the second factor. *See, e.g.*, *id.*; *Carillo Lopez*, 2020 WL 3414674, at *3.

3. History and Characteristics

The third factor likewise points towards detention. In considering Mr. Martinez Lopez's history and characteristics, the Court looks at his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings[.]" 18 U.S.C. § 3142(g)(3)(A). Several of these criteria merit discussion here.

The Court shares Judge Vaughan's concern about Mr. Martinez Lopez's ties to Mexico. To be sure, he has lived in Washington for most of his life. His long-term girlfriend is pregnant with the couple's fourth child and their other three children reside in Washington. However, the only other Washington-based family is his uncle's family. Dkt. No. 48 at 8; *see Rhule*, 2020 WL 5984072, at *6 (despite defendant's 34-year tenure in Seattle and lack of long-standing ties to Russia, he had only one family member remaining in the area). In contrast, Mr. Martinez Lopez recently traveled to Mexico and has many family members there—including his parents. Dkt. No. 44 at 14; Dkt. No. 48 at 8. Mr. Martinez Lopez's ties to Washington are thus counterbalanced by the sizeable amount of family ties he has in Mexico. And as the Government notes, nothing is keeping his girlfriend and children from joining him there should he flee. Dkt. No. 48 at 8.

The Court likewise agrees with Judge Vaughan that Mr. Martinez Lopez's criminal record is rather limited and non-violent. Dkt. No. 44-1 at 13; Dkt. No. 44 at 14; Dkt. No. 48 at 9. He has convictions for reckless driving, DUI, and driving with a suspended license. Dkt. No. 44 at 14. But what ultimately turns this factor in favor of detention is Mr. Martinez Lopez's pattern of failing to appear and noncompliance with release conditions. Warrants were issued in two previous cases

and, as Judge Vaughan observed, Mr. Martinez Lopez twice violated the terms of his probation. *See* Dkt. No. 44-1 at 13; Dkt. No. 48 at 9. Indeed, he committed the current charged offenses while on state supervision. Dkt. No. 44-1 at 13; Dkt. No. 48 at 9. Mr. Martinez Lopez therefore poses a significant risk of nonappearance at future proceedings. *See United States v. Smith*, No. CR17-0085-JCC, 2017 WL 6550902, at *2 (W.D. Wash. Oct. 2, 2017) (defendant posed a risk of nonappearance because of his noncompliance while previously on supervised release).

This segues into a related concern: the significant number of discrepancies in Mr. Martinez Lopez's statements to the Probation Office and noncompliance with his state substance abuse treatment program. He represented that he did not have any positive urinalysis tests when in fact he tested positive for alcohol and cocaine at least once—a misstep that resulted in placement in a more rigorous treatment plan. Dkt. No. 44-1 at 14. Other discrepancies include the amount of rent Mr. Martinez pays, whether his girlfriend's mother lives with them, and that his girlfriend's mother was not aware that he is in treatment. Dkt. No. 48 at 9. As Judge Vaughan noted at the detention hearing, "[i]t is incredibly important that a defendant be fully forthright and honest with the probation office if they're to be supervised—particularly here[.]" Dkt. No. 44-1 at 15. Mr. Martinez Lopez's dishonesty, spotty compliance with release conditions, and issues with appearing in past proceedings leave the Court with little confidence that things will be different this time around.

Mr. Martinez Lopez nonetheless contends that the following conditions will reasonably assure his appearance at future proceedings: GPS monitoring; drug and alcohol testing; prohibition from possessing or consuming alcohol or other intoxicants; obtaining an alcohol/substance abuse evaluation; participation in a drug/alcohol treatment program; restricting travel to the Western District of Washington; surrendering all current and expired passports and travel documents; maintaining residence as directed by Pretrial Services; and actively seeking employment. Dkt. No.

44 at 13–14. The Court disagrees. Although restrictive, the problem with these and similar conditions is that they depend on Mr. Martinez Lopez's voluntary compliance—something he has repeatedly struggled with. *See, e.g.*, *Rhule*, 2020 WL 5984072, at *6 ("A GPS tracker can be removed, and once it is, [Defendant] could flee. The ban on internet access and prohibition on the transfer of cryptocurrency suffer the same defect: they both heavily rely on [Defendant]'s voluntary compliance."); *Garg*, 2021 WL 2012584, at *3 (rejecting GPS tracking as insufficient condition because defendant was unemployed and faced serious charges, and the evidence against him was strong). Especially given Mr. Martinez Lopez's dishonest and incomplete statements to the Probation Office, the risk of continued noncompliance and future nonappearance is simply too high in this case. The Court finds it more probable than not that Mr. Martinez Lopez poses a flight risk, and no set of conditions will reasonably assure his appearance at future proceedings. *See United States v. Lawrence*, 189 F.3d 838, 844 (9th Cir. 1999) (under the preponderance of the evidence standard, "facts must be shown to be more likely true than not").

    4. <u>Danger to the Community</u>

  The fourth and final factor also weighs in favor of detention. As noted, Mr. Martinez Lopez stands accused of possessing large quantities of extremely dangerous drugs with an intent to distribute them throughout the community. The evidence in this case—including the large sums of cash seized from his residence and the extensive communications with other co-conspirators—paints a picture of a broad drug enterprise. Indeed, and as noted above, he actively managed this illicit enterprise while on state supervision. Law enforcement's lengthy surveillance of Mr. Martinez Lopez and his co-conspirators likewise demonstrates that this is not isolated or new behavior. This reflects a serious, ongoing disregard for the dangerousness of the underlying conduct to the community and his own family. *See Carillo Lopez*, 2020 WL 3414674, at *4; *United States v. Pardo*, No. 2:22-CR-00151-LK, 2022 WL 16553286, at *6 (W.D. Wash. Oct. 31, 2022)

("[T]he facts alleged in this case—including conspiring to distribute controlled substances and possession with intent to distribute large amounts of fentanyl and methamphetamine—illustrate the inherent danger illegal drug distribution poses to communities." (cleaned up)). Mr. Martinez Lopez's previous noncompliance with release conditions (namely, his brazen participation in a sizeable drug enterprise) provides ample ground for the Court, like Judge Vaughan, to infer a substantial risk that he will again endanger the community and his family with the same or similar activities. *See Motamedi*, 767 F.2d at 1407 (a district court may "infer a present danger to the community" from "prior convictions, police reports, and other investigatory documents"); *Rhule*, 2020 WL 5984072, at *3 (a defendant's "past conduct is relevant only to the extent it suggests he will endanger the community in the future.").

Mr. Martinez Lopez points to the above-noted conditions and argues that they will ameliorate any danger to the community. Dkt. No. 44 at 15. Here again, though, the Court disagrees because such conditions turn on his voluntary compliance and complete transparency with the Probation Office. *See Rhule*, 2020 WL 5984072, at *6. Mr. Martinez Lopez's renewed suggestion that he poses no danger to the community because guns were not found in his residence and he never threatened violence is likewise unavailing for the reasons already discussed. *See Carillo Lopez*, 2020 WL 3414674, at *3.

Last, Mr. Martinez Lopez notes that his drug trafficking scheme has now been shut down, his drugs seized, and his redistributors arrested. Dkt. No. 44 at 15. He asserts that, if released, his home (wherever that might be) will be subject to searches by Pretrial Services. *Id.*; *see Rhule*, 2020 WL 5984072, at *3 (defendant was unlikely to resume his "industrial-level marijuana operation" without detection by the Probation Office). Although the Court agrees that it would be unwise for Mr. Martinez Lopez to continue to store drugs at his residence, the evidence demonstrates an aptitude for drug dealing and evading detection while under supervision. And while it is true that

many—if not, all—of his known redistributors have been arrested, the extent of the trafficking network revealed during law enforcement's several-month surveillance evinces an ability to find new redistributors and lower-level peddlers. The Court is thus left with an abiding conviction that Mr. Martinez Lopez poses an ongoing danger to the community, and no set of conditions will reasonably assure the community's safety if he is released pending trial. *See United States v. Lonich*, 23 F.4th 881, 916 (9th Cir. 2022) (the clear and convincing standard requires the factfinder to have "an abiding conviction that the truth of the factual contentions at issue is highly probable" (cleaned up)).

   5.   Summary and Outcome

Having thoroughly reviewed the pretrial services report, briefing, evidence produced at the detention hearing, and the remainder of the record, the Court concludes that the Section 3142(g) factors mandate pretrial detention. The Government has proved by a preponderance of the evidence that no conditions will reasonably assure Mr. Martinez Lopez's appearance, and it has shown by clear and convincing evidence that no conditions will reasonably assure the safety of the community.

### III.   CONCLUSION

The Court DENIES Mr. Martinez Lopez's Motion for Review and Revocation of Magistrate Judge's Detention Order. Dkt. No. 44. He shall remain detained pending trial.

Dated this 17th day of January, 2023.

Lauren King
United States District Judge